2002 WY 86

**Anthony Dustin HANKINSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 01–124.**

Supreme Court of Wyoming.

June 6, 2002.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Assistant Appellate Counsel, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D.

Michael Pauling and Robin Sessions Cooley, Senior Assistant Attorneys General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] Appellant, Anthony Hankinson (Hankinson), was convicted of conspiracy[1] to commit aggravated assault and battery.[2] He submits this appeal contending that there is not sufficient evidence to sustain the conviction. We will affirm.

## ISSUE

[¶ 2] The only issue presented for our review is whether or not sufficient evidence is present to sustain Hankinson's conviction, although it is couched in terms of possible abuse of discretion by the district court in denying his motion for judgment of acquittal,[3] which was made after all evidence had

---

1. Wyo. Stat. Ann. § 6-1-303 (LexisNexis 2001) states:

    **§ 6-1-303. Conspiracy; renunciation of criminal intention; venue.**
    (a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.
    (b) A person is not liable under this section if after conspiring he withdraws from the conspiracy and thwarts its success under circumstances manifesting voluntary and complete renunciation of his criminal intention.
    (c) A conspiracy may be prosecuted in the county where the agreement was entered into, or in any county where any act evidencing the conspiracy or furthering the purpose took place.

2. Wyo. Stat. Ann. § 6-2-502 (LexisNexis 2001) states:

    **§ 6-2-502. Aggravated assault and battery; penalty.**
    (a) A person is guilty of aggravated assault and battery if he:
    (i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
    (ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;
    (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in

defense of his person, property or abode or to prevent serious bodily injury to another; or
(iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.
(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.

3. W.R.Cr.P. 29 states:

    **Rule 29. Motion for judgment of acquittal.**
    (a) *At close of evidence.*—Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information or citation after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the state is not granted, the defendant may offer evidence without having reserved the right.
    (b) *Reservation of decision.*—If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns the verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.
    (c) *After discharge of jury.*—If the jury returns a verdict of guilty or is discharged with-

been received, including Hankinson's testimony.

## FACTS

[¶ 3] Our recitation of the facts pertinent to the resolution of the issue raised in this appeal need only be very brief. Hankinson and Lester Poague got drunk on July 25, 2000. They decided to go to the business owned by Daryl Coast (Coast) and give him a beating, because of grievances against Coast, real or imagined, the details of which are not pertinent to this appeal and which Hankinson was unable to articulate in a manner that made much sense. After drinking most of the day, Hankinson and Poague went to Coast's place of business and broke in the door. Once inside, they looked for Coast because they wanted to "kick his ass." Because Coast was a much bigger man than Poague, Poague had armed himself with an axe handle from Hankinson's pickup truck. According to both Hankinson and Poague, Hankinson's main purpose in being there was to make sure his brother did not enter into the fight on Coast's side. Hankinson's brother was a good friend of Coast's. However, Coast was not at his business, so the two vandals scattered business papers and about two or three hundred pennies from a cash box onto the counter and the floor, poured fingernail polish on a credit card machine, and Hankinson defecated on the floor. As the two were leaving, Hankinson took a coffee can, which was used as an ashtray for the business (and the can apparently contained a few of the pennies which were strewn about the business), and threw it into the back of his pickup truck, along with the empty bottle of fingernail polish. Hankinson took those two items because he thought his fingerprints might be on them.

[¶ 4] Hankinson subsequently was charged with burglary[4] with intent to commit aggravated assault and battery on the person of Coast, burglary with intent to commit larceny, based on the removal of the coffee can and some of the pennies, as well as the conspiracy charge described above.

out having returned a verdict, a motion for judgment of acquittal may be made or renewed within 10 days after the jury is discharged or within such further time as the court may fix during the 10 day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal within 10 days after such motion is filed, and if not so entered shall be deemed denied, unless within such 10 days the determination shall be continued by order of the court, but a continuance shall not extend the time to a day more than 30 days from the date the verdict is returned. If no verdict is returned, the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

(d) *Conditional ruling on motion for new trial.*—If a motion for judgment of acquittal after verdict of guilty under this rule is granted, the court shall also determine whether any motion for a new trial should be granted if the judgment of acquittal is thereafter vacated or reversed, specifying the grounds for such determination. If the motion for a new trial is granted conditionally, the order thereon does not affect the finality of the judgment. If the motion for a new trial has been granted conditionally and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. If such motion has been denied conditionally, the appellee on appeal may assert error in that denial, and if the judgment is reversed on appeal,

subsequent proceedings shall be in accordance with the order of the appellate court.

4. Wyo. Stat. Ann. § 6–3–301 (LexisNexis 2001) states:

**§ 6–3–301. Burglary; aggravated burglary; penalties.**

(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

(b) Except as provided in subsection (c) of this section, burglary is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

(c) Aggravated burglary is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,000.00), or both, if, in the course of committing the crime of burglary, the person:

(i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon;

(ii) Knowingly or recklessly inflicts bodily injury on anyone; or

(iii) Attempts to inflict bodily injury on anyone.

(d) As used in this section "in the course of committing the crime" includes the time during which an attempt to commit the crime or in which flight after the attempt or commission occurred.

[¶ 5]   The jury found Hankinson not guilty on the two burglary charges, but guilty of the conspiracy charge.

## STANDARD OF REVIEW

[¶ 6]   The benchmark for review of sufficiency of the evidence claims is whether the evidence, when viewed in the light most favorable to the State, is such as to permit a reasonable trier of fact to find guilt beyond a reasonable doubt. *Statezny v. State*, 2001 WY 22, ¶ 15, 18 P.3d 641, ¶ 15 (Wyo.2001). Moreover, we will not substitute our judgment for that of the jury. Rather, we determine whether a quorum of reasonable and rational individuals would, or even could, have found the essential elements of the crime were proven beyond a reasonable doubt. *Saiz v. State*, 2001 WY 76, ¶ 17, 30 P.3d 21, ¶ 17 (Wyo.2001).

## DISCUSSION

[¶ 7]   The central thrust of Hankinson's appeal is that he was too drunk to have formed the specific intent to conspire with Poague in the first place and, to the extent they discussed a "plan" to beat up Coast using the axe handle, it did not rise to the level of a conspiracy, as that word is viewed in the context of the criminal law. Conspiracy is defined as follows in Black's Law Dictionary 305 (7th ed.1999):

> **Conspiracy,** n. An agreement by two or more persons to commit an unlawful act; a combination for an unlawful purpose.  In criminal law, conspiracy is a separate offense from the crime that is the object of the conspiracy. . . .
>
> . . . .
>
> "[Conspiracy is an] elastic, sprawling and pervasive offense, . . . so vague that it almost defies definition.  Despite certain elementary and essential elements, it also, chameleon-like, takes on a special coloration from each of the many independent offenses on which it may be overlaid.  It is always 'predominantly mental in composition' because it consists primarily of a meeting of minds and an intent." *Krulewitch v. United States*,

336 U.S. 440, 445–48, 69 S.Ct. 716, 719–20, 93 L.Ed. 790 (1949) (Jackson, J., concurring).

[¶ 8]   In *Jasch v. State*, 563 P.2d 1327, 1332 (Wyo.1977), we defined a conspiracy as an agreement between two or more persons to do an unlawful act.  The crime of conspiracy is complete when an agreement has been made and overt acts are performed to further the unlawful design. *Also see Phillips v. State*, 835 P.2d 1062, 1067–68 (Wyo.1992).  Conspiracy is a specific intent crime and is commonly defined as an agreement between two or more persons to commit an unlawful act.  Under widely adopted statutory concepts, a conspiracy is completed when an agreement has been made and some overt act is performed in furtherance of the conspiracy.  The agreement that must be shown to support a conviction of a conspiracy to commit a crime is not the same as the "meeting of the minds" demanded for a contract.  A mere tacit understanding will suffice, and there need not be any written statement or even a speaking of words, which expressly communicates agreement. *Wehr v. State*, 841 P.2d 104, 109–10 (Wyo.1992); *Rands v. State*, 818 P.2d 44, 46 (Wyo.1991); *Bigelow v. State*, 768 P.2d 558, 562 (Wyo. 1989); *also see Burk v. State*, 848 P.2d 225, 234–35 (Wyo.1993).  Wyoming has adopted the unilateral theory of conspiracy and, thus, a person who believes he is conspiring with another to commit a crime is a danger to the public regardless of whether the other person, in fact, has agreed to commit the crime. *Miller v. State*, 955 P.2d 892, 897–98 (Wyo. 1998).  The jury was properly instructed with respect to conspiracy:

> In determining whether a conspiracy existed, the jury should consider the acts and declarations of all the alleged participants. However, in determining whether a particular defendant was a member of the conspiracy, if any existed, the jury should consider only his acts and statements.  He cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that he was one of its members.
>
> While conspiring involves an agreement to violate the law, it is not necessary that

the persons charged met together and entered into an express or formal agreement, or that they stated in words or writing what the scheme was or how it was to be effected. It is sufficient to show that they came to a mutual understanding to commit the crime.

If it is established beyond a reasonable doubt that a conspiracy existed and that the Defendant was one of its members, then the acts and declarations of any other member of such conspiracy in or out of such Defendant's presence, done in furtherance of the objects of the conspiracy, and during its existence, may be considered as evidence against such Defendant. When persons enter into an agreement to commit a crime, they become agents for one another.

When two individuals are associated throughout an entire criminal enterprise, it is not necessary to prove that each of them did that which was necessary to establish each element of an offense; it is sufficient to show that they were associated together in doing that which comprises each element of the offense.

[¶ 9] The trial court also properly instructed the jury on the law pertaining to the circumstances under which a person charged with a specific intent crime may defend on the basis of voluntary intoxication. Wyo. Stat. Ann. § 6–1–202 (LexisNexis 2001),[5] W.P.J.I.Cr. 8.18 (1996); *Brett v. State*, 961 P.2d 385, 391–92 (Wyo.1998); *and see Dice v. State*, 825 P.2d 379, 382–83 (Wyo.1992); and R.W. Gascoyne, Annotation, *Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge*, 8 A.L.R.3d 1236, esp. § 4 (1966 and Supp.2001). The instruction given was this:

Evidence has been introduced tending to show that the Defendant was suffering from self-induced intoxication.

Self-induced intoxication is a defense to the crimes charged if the Defendant was intoxicated to such a degree that he was unable to formulate the intention to commit the crimes, or to form an agreement to commit these crimes.

Intoxication is self-induced if it is caused by substances which the Defendant knows or ought to know have the tendency to cause intoxication and which he knowingly and voluntarily introduced into his body. The fact that the Defendant was dependent upon the intoxicating substance is not relevant in determining whether his intoxication was self-induced.

Accordingly, if you find that the Defendant, at the time of the crimes charged, was suffering from self-induced intoxication to such a degree that there is a reasonable doubt in your minds whether the Defendant possessed the mental ability to form the intention to commit the crimes charges, then you should find the Defendant not guilty.

[¶ 10] Whether or not Hankinson was so drunk that he could not form the requisite specific intent, and whether Hankinson actually engaged in a conspiracy to commit the crime of aggravated assault and battery on Coast, were questions for the jury. There was evidence that suggested that Hankinson was relatively lucid on the night of the crime. During the crimes, Hankinson had to make decisions and take actions that required some presence of mind and volition, even if those actions were only the basest form of stupidity. In light of this evidence, the jury could reasonably have inferred that Hankinson acted with specific intent, even though there was a great deal of

**5.** Wyo. Stat. Ann. § 6–1–202 (LexisNexis 2001) states:

**§ 6–1–202. Being under the influence not a defense; effect upon intent; "self-induced."**

(a) Self-induced intoxication of the defendant is not a defense to a criminal charge except to the extent that in any prosecution evidence of self-induced intoxication of the defendant may be offered when it is relevant to negate the existence of a specific intent which is an element of the crime.

(b) Intoxication is self-induced if it is caused by substances which the defendant knows or ought to know have the tendency to cause intoxication and which he knowingly and voluntarily introduced or allowed to be introduced into his body unless they were introduced pursuant to medical advice. The fact that the defendant is dependent upon the intoxicating substance is not relevant in determining whether his intoxication is self-induced.

evidence to indicate that Hankinson was very drunk and, in his own testimony, he claimed to be in an alcoholic blackout at the time. Likewise, though the agreement that Poague and Hankinson made to assault Coast was crude and ill conceived, the jury could reasonably have inferred that a conspiracy was present. Hankinson's argument focuses on his own view of the facts, rather than that view which might have been taken by reasonable jurors.

[¶ 11] Finally, Hankinson contends that the jury's verdicts are so inconsistent that they cannot stand. We do not agree. In this regard, Hankinson contends that the jury determined there was not evidence that he had the intent to commit burglary, and, therefore, he could not have the intent necessary to engage in a conspiracy either. The jury might well have decided that Hankinson did not intend to commit burglary, though that is speculation. However, the jury could, and did, infer from all of the evidence that Hankinson conspired with Poague to assault Coast, even though it was obvious to all that their efforts in that regard were, fortunately, in vain. In several instances, this Court has said that consistency in a jury's verdict is not necessary. *Eatherton v. State*, 810 P.2d 93,

98 (Wyo.1991); *Lessard v. State*, 719 P.2d 227, 230–32 (Wyo.1986). Professor Wright states the rule in his treatise as follows:

> In a case in which there are multiple counts, each one is treated as if it were a separate indictment. The verdict on the various counts need not be consistent. An acquittal on one count does not prevent conviction on another, even though the evidence is the same and defendant could not have committed one crime without committing both, so long as the evidence is sufficient to support conviction on the count on which a guilty verdict was reached.

*Doud v. State*, 845 P.2d 402, 407 (Wyo.1993) (quoting 3 Charles Alan Wright, *Federal Practice and Procedure* § 514 at 14–16 (1982)).

[¶ 12] The Judgment and sentence of the district court are affirmed.